## Case No. 12,420.

### SAYLES v. HAPGOOD et al.

[3 Fish. Pat. Cas. 632; 2 Biss. 189; Merw. Pat. Inv. 707; 2 Chi. Leg. News, 9.] [1]

Circuit Court, N. D. Illinois. Oct. Term, 1869.

PATENTS — IMPROVEMENT IN CULTIVATORS — NOVELTY.

1. When a man conceived a certain machine, no one knows except himself. When he described it, no one knows except himself and those to whom he described it. This is, from the nature of the case, the testimony upon which reliance must be placed.
[Cited in Johnson v. McCabe, 37 Ind. 539.]

2. Priority of conception, followed by a prior patent, gives priority of right.
[Cited in National Filtering Oil Co. v. Arctic Oil Co., Case No. 10,042.]

3. Letters patent for an improvement in cultivators, granted to James Dundas, February 8, 1859, and reissued, are void for want of novelty, the same invention having been conceived, and a machine constructed, by one Marsh, before the conception of the invention and the construction of a machine, respectively, by Dundas.
[Cited in Marsh v. Sayles, Case No. 9,119.]

This was a bill in equity, filed by the complainant [Thomas Sayles] as assignee of James Dundas, to restrain the defendants [Charles H. Hapgood and others], from infringing letters patent for an improvement in cultivators, granted to James Dundas February 8, 1859 [No. 22,859], re-issued October

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission. Merw. Pat. Inv. 707, contains only a partial report.]

16, 1866 [No. 2,380]. The claim of the original patent was as follows: "The arrangement of the half shovels, w, w, in connection with the bars, h, h and i, to be moved to the right or left at pleasure of the operator." The claims of the re-issued patent, re-issued October 16th, 1866, and assigned to complainant, were as follows: "First. The combination in a straddle-row cultivator of the following instrumentalities, viz: the two wheels, frame and a series of plows arranged in two gangs, with a central space between the gangs so as to till the soil simultaneously at both sides of a single row of plants which the machine straddles; all of these operating in the combination substantially as set forth. Second. The combination in a straddle-row cultivator of the following instrumentalities, viz: the two wheels, frame, the series of plows arranged in two gangs as aforesaid, and seat for the driver; all of these operating in the combination substantially as set forth. Third. The combination in a straddle-row cultivator of the following instrumentalities, viz: the two wheels, frame, the series of plows arranged in two gangs as aforesaid, and movable stocks; all operating in the combination so that while the wheels limit the penetration of the plows, the inner plows of the two gangs may be moved laterally to avoid the plants that are out of line in the row, substantially as set forth. Fourth. The combination in a straddle-row cultivator of the following instrumentalities, viz: the two wheels, frame, the series of plows arranged in two gangs as aforesaid, movable stocks as aforesaid, and driver's seat; all operating in the combination substantially as set forth. Fifth. The combination in a straddle-row cultivator of the following instrumentalities, viz: the two wheels, frame, the series of plows arranged in two gangs as aforesaid, driver's seat, and a connection between the movable plows, all operating in the combination substantially as set forth. Sixth. The combination in a straddle-row cultivator of the following instrumentalities, viz: the wheels, frame, series of plows arranged in two gangs as aforesaid, and mechanism to permit the plows to be raised relatively to the treads of the wheels, all constructed and operating in the combination substantially as set forth."

West & Bond and George Harding, for complainant.

Goodwin, Larned & Towle, for defendants.

DRUMMOND, District Judge. This is a bill in equity against the defendants for an infringement of the patent of James Dundas, issued in 1859, and reissued in 1866, for a certain improvement in cultivators, which consists, in substance, of an arrangement by which rows of corn are hoed or tilled at one operation, through fixed shovels, combined with shovels movable laterally, and with devices for raising or lowering them at the will of the operator, who rides on the machine,

which is borne on two wheels, with an axle high enough to pass over the rows of corn.

The plaintiff is the assignee of Dundas.

Various questions were discussed on the argument, but the only one upon which any stress was placed, or about which there was any serious controversy, was whether Dundas was the first and original inventor of the improvement in the cultivator, as claimed by him. No point was made upon the identity of the machines manufactured by the defendants and that patented to Dundas; but it is claimed on the part of the defendants that a man by the name of Hiram H. Marsh first invented the improvement claimed by and patented to Dundas, and the controversy depends upon which was the first inventor of the improved cultivator.

The conception first arose in the mind of Dundas in June or July, 1850 (in his deposition he says June), and it appears from the deposition of Dundas, and of his son, that at that time the father gave a description of a cultivator to the son sufficient to enable the latter to construct it. The son says that he began to build one in the winter of 1850, and that he and his father completed the wood work of it in the winter or very early in the following spring, but that it was not ironed until about the first of June, 1851.

This machine, thus constructed by Dundas and his son, was used during the season of 1851, in June or July. So that it appears from the plaintiff's testimony that the plan was first conceived in June or July, 1850, and described at that time, but not carried out into a complete and operating machine until the summer of 1851.

Dundas made application for a patent on the first of August, 1851, but from circumstances not necessary now further to refer to, then failed in his application, and, as has already been stated, the patent was not issued until 1859.

This is the state of the evidence as to the invention of Dundas.

Marsh came to Illinois, it would seem, some time in 1847 or 1848. He married on the 15th of October, 1849, and he and his wife went to live on a farm on Centre Prairie, about ten miles from Ottawa. Mrs. Marsh says that before their marriage, Marsh told her of an improvement in a cultivator which he had invented, and he described it to her. Jarvis Lawrence says that he moved into the neighborhood where Mr. Marsh was in March, 1850, and that Marsh, in the spring or summer of 1850, spoke to him of his improvement in a cultivator, telling him how it would operate. James P. H. Bates also says that Marsh boarded with him in 1847-8, and that at different times he used to speak of constructing a machine for cultivating corn by riding and straddling the rows with wheels; that this was in the season of 1848, while he was boarding with the witness. Uri Weaver also states that he became acquainted with Marsh in 1847 or 1848, and that he also spoke

to him in May, 1850, of an improvement that he had invented in a cultivator for hoeing and tilling corn; that he had described it to him by taking sticks and explaining how he could make it operate.

This is substantially the testimony on the part of the defendants as to the conception of the improvement in the cultivator by Marsh, and of the description which he gave of it from time to time, and to different persons.

In the fall of 1850, Marsh and his wife went to Salem, Tippah county, Mississippi, and Marsh made a contract to teach school, which contract is in evidence, and is dated the 5th of December, 1850, and consequently, about the time of which there can be no mistake. This contract said that the school was to commence on the 1st day of January, 1851. I think the school was about eight miles from Salem, Mr. Marsh returning to Salem every Saturday, and Mrs. Marsh remaining in Salem in the meantime teaching music.

In the month of January, Marsh described to a mechanic of Salem, by the name of Ray, the kind of machine he had in his own mind, which he claimed was an improvement upon a cultivator, and gave instructions to him as to its mode of construction, and a machine similar to the one introduced in evidence on the part of the defendants, and referred to as model "B," was completed under his direction, and it was successfully operated in the presence of numerous witnesses, in a field of Cozart, at or near Salem, early in March, 1851, so that at that time, Marsh had carried his conception and ideas into practical effect by the construction and operation of an improved cultivator. The cultivator was used before the corn was planted in the spring. It was also used after the corn was planted and was considerably advanced, and the evidence is that corn was usually planted in that vicinity from the 10th to the 20th of March.

Marsh and his wife left Mississippi and came north that year (1851), and, by his direction, this cultivator was shipped to Illinois, but owing to some cause it never arrived here. What has become of it is unknown. During all this time, while Marsh had the project of the cultivator in his mind, and after it was constructed, it appears that he intended to make application for a patent, and on the 1st of July, 1851, he made the necessary affidavit, with the view of procuring a patent, and his application was filed in the patent office on the 5th of July.

On the 30th of July, 1851, Marsh's claim was rejected and a patent refused, and he becoming discouraged, the claim was not further prosecuted in the patent office.

This seems to be the state of facts with reference to the conception, description, construction and practical operation of the invention of Marsh, independent of his own testimony.

When comparing his testimony with the

testimony of other witnesses in the case, it would seem that his memory is not reliable as to dates. In June, 1864, he told Mr. Furst and Mr. Bond that he had made the invention about three months before the application for his patent, which application, as we have already seen, was in the beginning of July. Now, it is clear that he is mistaken as to this, because the testimony of the construction and use of a machine as early as February or March, 1851, seems conclusive. It also appears that Marsh made an affidavit on the 24th of March, 1866, in Chicago, in which he says that in January or February, 1851, he conceived in his own mind a plan for a corn cultivator, but did not make a drawing or model of the same, or fully explain the same to any one until the month of May of the same year, which it is clear was long after he had actually caused his cultivator to be constructed, and, besides, there is a letter in evidence from Munn & Co., dated the 31st of December, 1850, which refers to one from Marsh of the 17th of the same month, making inquiry as to the steps necessary to be taken toward securing letters patent for an invention, which must have referred to this improved cultivator. So that there can be no doubt that Marsh was mistaken in the dates mentioned in his affidavit of the 24th of March, 1866, just mentioned.

These are the facts as set forth by the evidence on the part of the plaintiff and of the defendants, and what is the truth in relation to them?

And, first, as to the application in the patent office. That is a matter of record, and about the time there can be no doubt. The application of Dundas was in August, 1851. That of Marsh was in July of the same year. Then, Marsh was prior, in point of time, in the patent office.

Secondly, as to the construction and practical operation of the machine. It is not claimed, and the proof does not establish, on the part of the plaintiff, that Dundas brought a practical operating machine into being before some time during the season of 1851, and when it was considerably advanced. The testimony of the son is, as we have seen, that the iron work was not completed until June, 1851, and it does not seem to have been operated until the summer of 1851. This fact depends mainly, if not exclusively, upon the testimony of Dundas and his son, and, of course, is liable to error.

When was the machine of Marsh finished? As to this, if there is any reliance to be placed upon testimony, there can be no doubt whatever Marsh went to Mississippi, or was there in December, 1850. That time is fixed beyond all controversy. He was teaching school, and his wife was teaching music, in January and February, 1851, he a short distance from Salem and she in Salem. Then there is the concurrent testimony of many witnesses as to the construction and operation of the machine, various witnesses testifying that it was operated "before vegetation was started," "before the corn was planted," "before there was anything green," so that there really can not be any doubt as to the construction and operation of the Marsh machine. Then Marsh brought into being a machine which operated successfully before that of Dundas. He is prior, therefore, in point of time in the construction and operation of the machine.

The only remaining question is, thirdly, as to the time of the conception of the two machines. Here all we have on the part of Dundas is the testimony of the father and of the son. About this, of course, there may be room for forgetfulness, mistake, or error. When a man conceived a certain machine, no one knows except the man himself; when he described it, no one knows except himself and the person to whom he describes it. We have to rely upon their testimony in order to determine. If it were clear, in view of the fact that the invention was followed up by the issuing of the patent to Dundas, that he was prior in point of conception, then, perhaps, he would be entitled to the monopoly which is claimed by the plaintiff in this case. But we have the same sort of evidence, and, as it seems to me, even stronger, as to the conception of the Marsh machine. There are more witnesses who testify to the priority of the conception on the part of Marsh than there are to that on the part of Dundas. I have referred to the various witnesses who state that Marsh communicated the conception of this machine, and that it was, in point of fact, prior to 1850. Mrs. Marsh distinctly says that it was before her marriage. Of course, you may say she does not tell the truth, but the date of her marriage is a thing about which she would not be very apt to be mistaken, and she could refer to any event in connection with that and speak of it with reasonable certainty. So as to Mr. Lawrence; the time when he came to the neighborhood in which Marsh resided. And so as to Mr. Bates. On the whole, I think the weight of the evidence is, in this case, that the conception and construction of the Marsh machine was prior in point of time to that of the Dundas machine. And, therefore, that Dundas was not the first and original inventor of the improvement in a cultivator which was patented to him.

The bill will consequently be dismissed.

[For another case involving this patent, see Marsh v. Sayles, Case No. 9,119.]